# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Margarette & Michael Shields,<br><br>    Plaintiffs,<br><br>vs.<br><br>Receivable Management Services,<br><br>    Defendant. | No. CV-09-84-TUC-FRZ-DTF<br><br>**REPORT & RECOMMENDATION** |

    Pending before the Court is Defendant Receivable Management Services' (RMS) Motion to Set Aside Default and Default Judgment. (Dkt. 13.) Plaintiffs responded and Defendant filed a reply. (Dkts. 16, 19.) The Magistrate recommends the District Court, after its independent review of the record, enter an order granting Defendant's Motion to Set Aside Default and Default Judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

    Plaintiffs filed the Complaint in this action on February 11, 2009 (Dkt. 1) and served it on Defendant on May 22, 2009 (Dkt. 7). On July 20, 2009, Plaintiffs sought entry of default based on Defendant's failure to appear; that motion was mailed to RMS's corporate headquarters. (Dkt. 9.) The Clerk of Court entered default on July 27, 2009. (Dkt. 10.) On August 6, 2009, Plaintiffs filed a request for default judgment, which was mailed to Defendant. (Dkt. 11.) On August 14, 2009, the Court entered default judgment for Plaintiffs and awarded damages in the amount of $1000, attorney's fees in the amount of $3,207.50,

and costs in the amount of $390.¹ (Dkt. 12.)

On August 26, 2009, Defendant filed the instant motion to set aside the default. In the motion, Defendant set forth the following time-line of events leading up to the default judgment, supported by declarations. Upon receipt of the Complaint at RMS's corporate offices, on May 22, 2009, RMS Compliance Manager, Maryann Cantor, forwarded it to AIU Holding, Inc. (AIU),² its liability insurance carrier, along with Plaintiffs' account history. (Dkt. 13-1 at 2.) On June 9, AIU sent written notification of receipt and informed RMS that the claim file had been assigned to Claims Analyst Tiffany Minott. (*Id.*) Based on past experience, Cantor assumed the case had been assigned to litigation counsel to file an answer. (*Id.*)

On July 23, 2009, Michael Smith of Lewis Brisbois Bisgaard & Smith was assigned as counsel for RMS, and he received the summons and complaint from Minott. (*Id.* at 6.) The papers Smith received did not indicate if, or when, service had been effected or how to contact RMS. (*Id.*) Smith contacted Minott by email and placed several calls to her, but did not receive a response until August 7. (*Id.* at 6-7.) On August 3, 2009, Smith called RMS and left a message with the CFO, which was not returned. (*Id.* at 7.) On August 6, Smith checked the online docket and discovered that default had been entered on July 27. (*Id.*) That day, Smith called another number at RMS and reached Cantor. (*Id.* at 8.) In that call, Smith informed Cantor that he had been assigned the case after Plaintiffs had requested entry of default, and that default subsequently had been entered. (*Id.* at 3.) That day, Smith also called Plaintiffs' counsel and left a voice message; he did not receive a return contact. (*Id.*

---

¹ Because Plaintiffs, as the only party present and with standing in the case, consented to proceed before a United States Magistrate Judge for all proceedings including entry of final judgment, pursuant to 28 U.S.C. §636(c)(1) (Dkt. 6), the Magistrate Judge had jurisdiction to, and did, enter the requested default judgment. *See United States v. Real Property*, 135 F.3d 1312, 1314 (9th Cir. 1998).

² AIU was the successor to AIG, the corporate entity at the time Plaintiffs filed suit.

at 8.) Smith learned that Minott was no longer employed by AIU,[3] and the company had no explanation as to why Minott waited two months to assign the file to outside counsel. (*Id.*) After learning of the default, Smith actively worked with RMS to obtain the information necessary to vacate a default. (*Id.* at 8-9.)

## STANDARD FOR SETTING ASIDE DEFAULT JUDGMENT

Pursuant to Rule 55(c), a court may set aside the entry of a default judgment under Rule 60(b) for "mistake, inadvertence, surprise, or excusable neglect." Fed. R. Civ. P. 55(c), 60(b). The application of Rule 60(b) is committed to the district court's discretion. *TCI Group Life Ins. Plan v. Knoebber*, 244 F.3d 691, 695 (9th Cir. 2001), *overruled on other grounds by Egelhoff v. Egelhoff ex rel. Breiner*, 532 U.S. 141 (2001). However, Rule 60(b) is remedial in nature, which requires liberal application, and default judgments are considered drastic because cases should be decided on the merits whenever possible. *Falk v. Allen*, 739 F.2d 461, 463 (9th Cir. 1984). Thus, "where there has been *no* merits decision, appropriate exercise of district court discretion under Rule 60(b) requires that the finality interest give way fairly readily, to further the competing interest in reaching the merits of a dispute." *TCI Group Life Ins. Plan*, 244 F.3d at 696.

The Court must consider three factors in determining whether to lift the default judgment: "whether the defendant's culpable conduct led to the default; whether the defendant has a meritorious defense; and whether reopening the default judgment would prejudice the plaintiff." *Id.* If the defendant fails to satisfy any one of these prongs, that is grounds for denying relief. *In re Hammer*, 940 F.2d 524, 526 (9th Cir. 1991).

## ANALYSIS

Defendant set forth the factual basis of its defense, with a supporting evidentiary declaration (Dkt. 13-1 at 11-14), and argued that Plaintiffs will not be prejudiced because relief was sought within weeks of the default judgment. Plaintiffs did not respond on either of these points. Based upon its own review, and no opposition from Plaintiffs, the Court

---

[3] On July 27, 2009, AIU became Chartis Insurance.

finds Defendant has satisfied its burden on these two prongs – demonstrating a potentially meritorious defense and establishing that Plaintiffs will not be prejudiced by reopening the judgment. Therefore, the Court need only focus on the culpability prong of the test, which Plaintiffs contend Defendant fails.

An intentional failure to answer can be culpable, but "intentional" in this context does not encompass a "[n]eglectful failure to answer as to which the defendant offers a credible, good faith explanation negating any intention to take advantage of the opposing party, interfere with judicial decisionmaking, or otherwise manipulate the legal process." *TCI Group Life Ins. Plan*, 244 F.3d at 697-98. However, a defendant's conduct is generally found culpable if "there is no explanation of the default inconsistent with a devious deliberate, willful, or bad faith failure to respond." *Id.* at 698. The Ninth Circuit finds legal sophistication and consultation with counsel relevant to the culpability analysis, because under those circumstances a failure to answer can be interpreted as having been chosen for advantage; however, legal familiarity is not determinative of culpability. *Id.* at 699, n.6.

Plaintiffs contend Defendant's failure to respond was deliberate, willful or in bad faith. First, Plaintiffs argue Defendant was familiar with these type of lawsuits and failed to follow-up to ensure an answer was timely filed. Plaintiffs rely on *Gibbs v. Air Canada*, 810 F.2d 1529, 1537 (11th Cir. 1987) (finding that forwarding legal papers through the mail with no follow-up did not satisfy minimum procedural safeguard), for the proposition that a default caused by a company's lack of minimum procedural safeguards is not excusable neglect. In addition to this case not being controlling, Defendant argues it is distinguishable. The Court agrees. Although RMS is a large company with legal sophistication, it timely passed the complaint onto its insurer and received confirmation that it had been assigned to a staff member. Thus, it followed a standard procedure with minimum safeguards and it was reasonable for the company to assume, based on prior experience, that the case would be defended. It had no basis to know that it had not been properly handled until August 6, when contacted by the late-assigned defense counsel. These facts are supported by Cantor's declaration.

Second, Plaintiffs fault Smith for not immediately contacting Plaintiffs' counsel, searching the online docket, filing an appearance or seeking a continuance on July 23, when it received the complaint and summons. In light of those facts, Plaintiffs contend that, at the time default was entered, Defendant was on notice that an answer was not timely filed and that it was not adequately defending the action. Plaintiffs contend there was no good explanation for the time lapse between July 23 and the default judgment on August 14, nor why Defendant waited until August 6 to engage in due diligence by searching the docket.

Smith contends that by the time he received the complaint, default had been requested and was entered within two days. The evidence before the Court confirms that Smith received the case file sometime on a Thursday, and default was entered the following Monday. Although Smith could have searched the online docket sooner, contrary to Plaintiffs' argument, there is no evidence that prior to August 6, Smith or RMS had actual knowledge that no answer had been timely filed or that default had been entered. In the meantime, Smith made several attempts to contact the assigned representative at the insurance company and eventually contacted RMS directly. In addition, Smith averred that he contacted Plaintiffs' counsel on August 6, to which he received no response; Plaintiffs' attorney did not respond to that assertion. Once Smith became aware that default had been entered, he needed to gather information and documentation from RMS to support a request that it be set aside; the legal burden is the same whether the case is at the stage of entry of default or default judgment. *See TCI Group Life Ins. Plan*, 244 F.3d at 696. Although Smith could have taken other actions prior to default judgment being granted, there is no evidence he acted in a way that was not reasonable or in good faith.

Defendant's explanation, supported by declarations, is credible and negates any intention to manipulate the legal process or take advantage of the opposing party. Thus, the Court finds that Defendant was not culpable in the default. Defendant has satisfied the three-part test and the default judgment should be set aside.

**RECOMMENDATION**

For the foregoing reasons, the Magistrate Judge recommends the District Court, after its independent review, enter an order granting Defendant's Motion to Set Aside Default and Default Judgment and reopen the case.

Pursuant to 28 U.S.C. § 636(b), any party may serve and file written objections within ten days of being served with a copy of the Report and Recommendation. If objections are not timely filed, they may be deemed waived. The parties are advised that any objections filed are to be identified with the following case number: **CV-09-84-TUC-FRZ**.

DATED this 4th day of November, 2009.

_D. Thomas Ferraro_
United States Magistrate Judge